# CIRCUIT COURT OF THE CITY OF RICHMOND

Susan D. Howell

v.

Charter Westbrook Hospital
and Virginia Employment Commission

October 30, 1998

Case No. 598-4

BY JUDGE RANDALL G. JOHNSON

This is an appeal from a decision of the Virginia Employment Commission ("VEC" or "Commission") which denied unemployment benefits to Susan D. Howell. At issue is whether the termination of Howell from her employment was for misconduct connected with her work within the meaning of Va. Code § 60.2-618(2).

Howell was employed as a psychiatric technician at Charter Westbrook Hospital, primarily in adult care units. On October 14, 1995, she was rotated to an adolescent care unit. At approximately 6:15 p.m. on that day, Howell attempted to assist another technician who was having a problem with an "out of control" five-year-old patient. As Howell tried to get the patient to go into a "time out" room, the other technician left. The patient screamed profanity at Howell, kicked Howell, and punched Howell on Howell's left arm that was already injured and in a brace or Ace bandage. Eventually, Howell "swatted" the patient on the patient's rear end. The patient then calmed down and went into the time out room. Another employee who was nearby but who did not see the entire incident asked Howell what happened. After Howell told him, he reported the incident to Howell's supervisor. When questioned, Howell gave the account set out above, including her statement that she "swatted" the patient. Citing the hospital's written policy against patient abuse, the hospital terminated her.

The pertinent part of the hospital's written policy provides:

It shall be the policy of Charter Westbrook Hospital to make every effort to protect the fundamental human, legal and civil rights of the patients in its care. Employees are expected to treat each patient in a respectful and considerate manner regardless of his or her behavior, diagnosis, or history.

Any employee suspected of abusing a patient shall be suspended from work pending the results of the investigation. An employee found to have physically or verbally abused a patient shall be subject to discharge without prior notice or warning.

The purpose of this policy is to protect the individual patient, past or present, from neglect and/or abuse (physical, mental, verbal and/or professional irresponsibility).

*Definitions*

A. Abuse includes but is not limited to the following

1. Any physical violence which may result in injury, such as hitting, shaking, kicking or rough handling.

In *Branch v. Virginia Employment Commission*, 219 Va. 609, 249 S.E.2d 180 (1978), the Court said:

> In our view, an employee is guilty of "misconduct connected with his work" when he *deliberately* violates a company rule reasonably designed to protect the legitimate business interests of his employer, or when his acts or omissions are of such a nature or so recurrent as to manifest a *willful* disregard of those interests and the duties and obligations he owes his employer.

219 Va. at 611 (emphasis in original).

In this case, Howell admits to "swatting" a five-year-old psychiatric patient. While she claims her "swat" was intended to "physically prompt" the patient into the time out room, she has never — not in her initial account to her co-worker, not in her conference with her supervisor, and not at the VEC hearing — retreated from using the word "swat" to describe what she did. *Webster* defines the verb "swat" as "to hit with a sharp slapping blow," and the noun "swat" as "a powerful or crushing blow." *Webster's Ninth New Collegiate Dictionary* (1987). While Howell insists that she did not "spank" or "strike" the patient, the court must give some meaning to her continued use of a word that has such a clear meaning. The court holds that there is sufficient evidence in the record to support the Commission's finding that Howell struck the patient in violation of her employer's written rule.

Howell argues that even if she did technically violate her employer's rule, she should not be disqualified from receiving benefits because she was unaware of the rule and because she was not given adequate training to deal with adolescent patients. The court rejects both arguments.

With regard to whether Howell was aware of the her employer's rules, Employer Exhibit 4 to the Commission hearing is an Employee Verification Form signed by Howell acknowledging that she "received and understand[s] the policy and procedure on PATIENT ABUSE AND NEGLECT." If what she acknowledged receiving is not the same as what the hospital now claims she received, she has not satisfactorily explained the difference. With regard to Howell's claim that she was not adequately trained to deal with adolescent patients, the court refuses to believe that a reasonable person in Howell's position would think that the rules prohibiting striking a patient would be any different for adolescents than they were for adults. Whatever lack of training existed is not relevant to the incident that occurred.

Finally, and although it will probably not make Howell feel any better about the court's ruling, the court feels compelled to say that it is not totally unsympathetic to Howell's predicament on May 14, 1995. Faced with an out-of-control child who was using profanity, who was failing to follow reasonable instructions, and who was kicking and punching, many rational and good-hearted people might have reacted exactly as Howell did or even worse. The fact remains, however, that this was a special situation involving a five-year-old psychiatric patient. Whatever rules might exist in society generally about spanking, striking, or "swatting" children — and opinions on that subject vary widely — Charter Westbrook has every right to be especially concerned about the treatment of its patients and to zealously guard against even the slightest physical or mental abuse of them. Any person working with such patients, as Howell was paid to work with such patients, must also understand that concern and zealously guard against using any physical force that is inappropriate in that particular setting. Since the written rule at issue here is reasonable and is in furtherance of a legitimate concern of Charter Westbrook Hospital, and since Howell's intentional act on October 14, 1995, was a deliberate violation of that rule, the court must uphold the Commission's decision. It will be affirmed.